IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

CRYSTAL HILL,

       Plaintiff,


v.                                          Civil Action No. 2:05-cv-00417


JO ANNE B. BARNHART,
Commissioner, Social
Security Administration,

       Defendant.


## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Claimant's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f.  This case was referred to this United States Magistrate Judge by standing order to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B).  Presently pending before the court are Plaintiff's Motion for Judgment on the Pleadings and Memorandum in Support Thereof, Defendant's Brief in Support of Judgment on the Pleadings, and Plaintiff's Reply Brief.

Plaintiff, Crystal Hill (hereinafter referred to as

"Claimant"), filed an application for SSI on August 11, 2003, alleging disability as of November 1, 1995, due to bipolar disorder. (Tr. at 67, 76-77.)  The claim was denied initially and upon reconsideration. (Tr. at 49-53, 56-58.)  On March 26, 2004, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 59.)  The hearing was held on October 20, 2004 before the Honorable Harry C. Taylor, II. (Tr. at 247-75.)  By decision dated November 17, 2004, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 20-28.)  The ALJ's decision became the final decision of the Commissioner on April 29, 2004, when the Appeals Council denied Claimant's request for review. (Tr. at 4-6.)  On May 19, 2005, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 1382c(a)(3)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R.

2

§ 416.920 (2004).  If an individual is found "not disabled" at any
step, further inquiry is unnecessary.  Id. § 416.920(a).  The first
inquiry under the sequence is whether a claimant is currently
engaged in substantial gainful employment.  Id. § 416.920(b).  If
the claimant is not, the second inquiry is whether claimant suffers
from a severe impairment.  Id. § 416.920(c).  If a severe
impairment is present, the third inquiry is whether such impairment
meets or equals any of the impairments listed in Appendix 1 to
Subpart P of the Administrative Regulations No. 4.  Id. §
416.920(d).  If it does, the claimant is found disabled and awarded
benefits.  Id.  If it does not, the fourth inquiry is whether the
claimant's impairments prevent the performance of past relevant
work.  Id. § 416.920(e).  By satisfying inquiry four, the claimant
establishes a prima facie case of disability.  Hall v. Harris, 658
F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the
Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir.
1983), and leads to the fifth and final inquiry: whether the
claimant is able to perform other forms of substantial gainful
activity, considering claimant's remaining physical and mental
capacities and claimant's age, education and prior work experience.
20 C.F.R. § 416.920(f) (2004).  The Commissioner must show two
things: (1) that the claimant, considering claimant's age,
education, work experience, skills and physical shortcomings, has
the capacity to perform an alternative job, and (2) that this

3

specific job exists in the national economy.   McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 21.) Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of obesity, back strain, headache, and bipolar disorder.  (Tr. at 23.)  At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1.  (Tr. at 23.)  The ALJ then found that Claimant has a residual functional capacity for light work, reduced by nonexertional limitations. (Tr. at 25.) As a result, Claimant cannot return to her past relevant work.  (Tr. at 25.)   Nevertheless, the ALJ concluded that Claimant could perform jobs such as food assembler, mail clerk, and stock checker which exist in significant numbers in the national economy.  (Tr. at 26.)  On this basis, benefits were denied.  (Tr. at 26, 28.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.   In Blalock v. Richardson, substantial evidence was defined as

> evidence which a reasoning mind would accept
> as sufficient to support a particular
> conclusion. It consists of more than a mere
> scintilla of evidence but may be somewhat less

4

>           than a preponderance. If there is evidence to
>           justify a refusal to direct a verdict were the
>           case before a jury, then there is 'substantial
>           evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting

Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)).

Additionally, the Commissioner, not the court, is charged with

resolving conflicts in the evidence.  Hays v. Sullivan, 907 F.2d

1453, 1456 (4th Cir. 1990).  Nevertheless, the courts "must not

abdicate their traditional functions; they cannot escape their duty

to scrutinize the record as a whole to determine whether the

conclusions reached are rational."  Oppenheim v. Finch, 495 F.2d

396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the

Commissioner is supported by substantial evidence.

## Claimant's Background

Claimant was 27 years old at the time of the administrative

hearing.  (Tr. at 248.) She has a high school education.  (Tr. at

249.)  In the past, she worked as a cashier, office assistant, and

as a storekeeper in a video store.  (Tr. at 77-78.)

## The Medical Record

The court has reviewed all evidence of record, including the

medical evidence, and will discuss it further below as necessary.

### 1.   Mental Health Complaints

Claimant treated at Harts Health Center from September 15,

1994 through August 3, 2004.  During this time, she complained of

pain, anxiety, depression, sleep disturbances, irritability, crying episodes, "feelings of helplessness and hopelessness x 4 years", fibromyalgia, and migraines.  (Tr. at 195-240.)

Claimant also sought mental health treatment at Process Strategies from October 16, 2002 through November 12, 2003. (Tr. at 145-55.) She reported difficulty controlling her moods, decreased energy, restless sleeping, decreased concentration and interest, and increased depression and irritability.  (Tr. at 155.) By November 7, 2002, she reported that she was "doing pretty good"; that she was less moody and irritable, with improved sleep and concentration, but still struggled with low energy.  (Tr. at 151.) Physicians continued to manage her condition with medications.  Id.

For the next several months thereafter, Claimant fluctuated between improvement and worsening of her mental health symptoms. (Tr. at 146-51.)  Medication helped, but she was sometimes sluggish. (Tr. at 147, 148.)  She continued to have unstable moods periodically through July 2003.  (Tr. at 146.)

On November 6, 2003, Claimant told physicians at Process Strategies that she was feeling better than she had in a long while, and she had little sign of agitation or depression.  (Tr. at 145.)

Days later, on November 13, 2003, Dale M. Rice, M.A. and supervised psychologist Kelly Rush, M.A. examined Claimant.  (Tr. at 156-60.)  They noted her reports of episodes characterized by

6

diminished interest in activities, depressed mood, and feelings of worthlessness and hopelessness.   Claimant stated that these episodes would last approximately two weeks.  She also stated that she had episodes characterized by excessive energy, inflated self esteem, excessive goal directed activity and a decreased need for sleep.  Both of these were aided by her medication.  (Tr. at 156-57.)

Upon mental status examination, no significant mental pathology was found.   Mr. Rice diagnosed bipolar I disorder, moderate.   (Tr. at 158-9.)   He opined that Claimant's social functioning, concentration, persistence and pace were normal, and that her prognosis was fair.  (Tr. at 159-60.)

State agency medical source Joseph Kuzniar, Ed.D. completed a Psychiatric Review Technique form on December 9, 2003.   (Tr. at 170-82.)  He determined that Claimant's affective disorders were not severe.   Id. He opined that she had mild restrictions in activities of daily living, social functioning, and in maintaining concentration, persistence, or pace; but no episodes of decompensation.   (Tr. at 179.)

On December 31, 2003, physicians at Process Strategies noted Claimant's irritability, decreased sleep and appetite, weight gain, depression, blurred vision, reduced concentration, drowsiness, lethargy, and hair loss.  (Tr. at 149.) Notes thereafter, however, again reflect great improvement.  (Tr. at 241.)

At the request of Claimant's attorney, psychologist Laberta S. Salamacha and supervised psychologist Mendy Setliff-Gibson, M.A. examined Claimant on April 7, 2004. (Tr. at 185-189.)  They noted that Claimant was sad and depressed, and reported mood swings, irritability, frustration and anger.  Claimant also reported headaches on a weekly basis, worsened memory, trouble concentrating, and confusion.  Claimant reported anxiety, problems with bizarre mentation, paranoia, racing thoughts, and frequent fantasizing.  (Tr. at 185.)  However, she was able to maintain adequate concentration and attention.  (Tr. at 187.)

On the WAIS-III, Claimant's full scale IQ score was 102, placing her in the 55th percentile.  (Tr. at 187.) The MMPI-II test suggested that she might be suffering from severe psychological maladjustment, and that she presented with extreme somatic problems or chronic pain.  However, her F scores suggested that a possible exaggerated response set may have been used when responding to the items.  (Tr. at 188.)

Ms. Salamacha diagnosed bipolar I disorder, severe, with mood-congruent psychotic features; anxiety disorder due to hypothyroidism with generalized anxiety, panic attacks, and obsessive-compulsive symptoms (r/o).  (Tr. at 188.) She deemed Claimant markedly limited in her ability to work in coordination with or in proximity to others without being unduly distracted by

them[1], as well as her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms. Claimant was likewise markedly limited in her ability to work at a consistent pace without an unreasonable number and length of rest periods.  (Tr. at 190.)

Ms. Salamacha and Ms. Setliff-Gibson found Claimant extremely limited in her ability to maintain regular attendance and to be punctual within customary tolerances. Id.  They opined that she was markedly limited in her ability to interact appropriately with the general public, her ability to ask simple questions or request assistance, her ability to accept instructions and respond appropriately to criticism from supervisors, and her ability to get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes.   They also found her extremely limited in her ability to travel to unfamiliar places or use public transportation.  (Tr. at 191.)

2.   Physical Complaints

Claimant presented to Boone Memorial Hospital Emergency Room on August 16, 2002 with complaints of headaches and neck and upper back pain.  (Tr. at 134.)  X-rays of her cervical and thoracic spine were normal.  (Tr. at 138.)

Claimant was examined by state agency medical source Pathom

---

[1]   The form simultaneously indicates that Claimant was "extremely limited" in this category.

Thavaradhara, M.D. on November 6, 2003.  (Tr. at 139-41.) Dr. Thavaradhara concluded that she had no significant physical problems.  Id.

A state agency medical source completed a Physical Residual Functional Capacity Assessment form on December 1, 2003. (Tr. at 162-69.)  He opined that Claimant could occasionally lift 20 pounds and frequently lift 10 pounds; sit, stand or walk about 6 hours in an 8-hour workday; engage in pushing and pulling without limitation; occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds; and engage in all other posturals without limitation. (Tr. at 163-4.)  She should avoid concentrated exposure to extreme heat or cold, but had no other environmental limitations.  (Tr. at 166.)  The source opined that considering Claimant's pain, discomfort, and obesity, an RFC of light work was appropriate.  (Tr. at 167.)

Dr. Rosendo Dy diagnosed Claimant with hypothyroidism and fibromyalgia in October 2004. (Tr. at 242.)

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ's hypothetical question to the VE was inadequate in that it failed to specify Claimant's degree of dizziness; (2) the ALJ failed to properly weigh the evidence from Ms. Salamacha; and (3) the ALJ failed to consider Claimant's impairments in combination.  (Tr. at

10

6-16.) The Commissioner responds that the ALJ's decision was proper
and was supported by substantial evidence in all respects.  (Def.'s
Br. at 7-20.)  Claimant's Reply Brief reiterates and clarifies her
position, and offers additional citations to the record and to
authorities.  (Pl.'s Rep. Br. at 1-4.)

    1.    <u>Hypothetical Question</u>

    The ALJ posed a hypothetical question to the VE which stated
that the individual suffered "headaches which produce dizziness."
(Tr. at 270.)  The VE inquired as to how often the individual
suffered these symptoms, and the ALJ responded that this would vary
depending on the length of the headache.  (Tr. at 271.)  The VE
inquired whether the dizziness would preclude the person from
walking, reading or attending to job tasks; to which the ALJ
responded, "not all the time."  <u>Id.</u>  When asked on cross-
examination whether the individual could engage in substantial
gainful activity if the dizziness prevented her from focusing on
the task up to one hour of a work day, the VE indicated that she
could not.  (Tr. at 271.)

    Claimant argues that the VE's opinions were based on total
speculation, and that because the VE lacked specific information as
to how often Claimant experienced headaches and dizziness, as well
as the extent to which these symptoms would preclude her from
walking, reading, or performing job tasks, there was not
substantial evidence in support of her opinions. (Pl.'s Br. at 7-

8.)

The "hole" in Claimant's argument, as pointed out by the Commissioner, is that there is no evidence from any medical source that Claimant suffered headaches and dizziness to a degree that would impede her ability to work.  It is Claimant's burden to establish that she was medically impaired and functionally limited such that she was unable to work.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987); Hall v. Harris, 658 F.2d 260 (4th Cir. 1981); Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995); Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992).

Unfortunately, in this case, Claimant has not shown that she was limited as her argument suggests.  While hypothetical questions must fairly set out all a claimant's credible impairments and limitations, the questions need only reflect those restrictions which are supported by the record.  Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d. Cir. 1987.)  There is no support in the record for Claimant's implication in her question to the VE that her dizziness would prevent her from focusing for up to one hour per day, or for any other identifiable length of time, for that matter.

The court proposes that the presiding District Judge find that the ALJ's hypothetical question to the vocational expert was proper and was grounded in substantial evidence.

2.   Weighing Medical Evidence

Claimant argues that the ALJ failed to properly weigh the

12

opinions of Ms. Salamacha discussed above.  (Pl.'s Br. at 8-10.)

She argues that he erred in failing to discuss supportability of

her opinions or her specialization.  She also argues that the ALJ

failed to recognize that Ms. Salamacha's opinions were consistent

with other portions of the record.  Id. at 8-9.

The undersigned finds no error in the ALJ's evaluation of Ms.

Salamacha's opinions.  The ALJ explained that the limitations

prescribed by her report were "extreme and inconsistent with the

evidence of record."  (Tr. at 24.)  As noted by the Commissioner,

the ALJ gave a detailed summary of Ms. Salamacha's findings,

including her opinions that Claimant was "markedly" and "extremely"

limited in various work areas.  (Tr. at 22, 190-193.)  It is

apparent from the descriptive text of the opinion that the ALJ was

fully familiarized with this one-time examination by Ms. Salamacha.

Contrary to Claimant's assertions, the ALJ acknowledged the

specialization of Ms. Salamacha and Ms. Setliff-Gibson as licensed

psychologist and supervised psychologist, respectively.  (Tr. at

22.)  This was sufficient recognition of their qualifications.

The issues of supportability and consistency were adequately

addressed by the ALJ's summary of Ms. Salamacha's opinions on page

22 and his summary of Claimant's remaining medical history on pages

22-23.  A reading of these summaries reveals that Ms. Salamacha's

opinions are drastically at odds with the remainder of the record.

While the court will not weigh the evidence, it is notable that no

other source offers opinions that coincide with those of Ms. Salamacha. As the Commissioner points out, the notes from Claimant's two years of treatment at Process Strategies, as well as the records from Dr. Kessinger and Dr. Vance would all belie the restrictions Ms. Salamacha imposed.  Further, Ms. Salamacha's opinions do not correspond with Claimant's stated activities of daily living, the opinions of Mr. Rice and Ms. Rush, nor the opinions of state agency medical sources who reviewed the case, discussed above.

The issue for this court is not whether <u>all</u> evidence of record supports the ALJ's findings; the issue is whether <u>substantial</u> evidence of record supports his findings.  Based on the above, the court believes that the weight the ALJ afforded to the medical evidence in this case was properly supported by substantial evidence, and proposes that the presiding District Judge so find.

3.   Combination of Impairments

Claimant argues that the ALJ failed to consider the combined effect of all her impairments.  (Pl.'s Br. at 10-16.)  She argues that the ALJ completely ignored the combination analysis at step 5. (Pl.'s Br. at 10.)

First, Claimant asserts that the ALJ failed to duly consider the effects of her depression and obesity upon her level of pain. While her writing is well-stocked with quotations from case law, medical and clinical publications, and social security rulings, it

14

is devoid of citation to the record demonstrating the specific effect that Claimant's depression or obesity had upon her other impairments.  While it is the ALJ's duty to *consider* the impact of obesity and/or depression, it is still the Claimant's duty to *produce* solid evidence of how these conditions exacerbate her other conditions.  No medical source of record has opined that Claimant's obesity would prevent her from performing light or sedentary work, or that she suffered increased pain symptoms on account of this condition.   Rather, as noted by the ALJ, Claimant takes only Tylenol and Aleve for pain.  (Tr. at 24.)

State agency consultant Pathom Thavaradhara, M.D. examined Claimant and found that despite her BMI of 47, her other clinical and neurological findings were normal. (Tr. at 22, <u>citing</u> report, tr. at 139.)  This report further found that Claimant was able to walk a mile, climb two flights of stairs, and carry 50 pounds. Moreover, the state agency medical source cited by the ALJ in support of his findings opined that light work was appropriate "<u>due to pain and discomfort and considering her obesity.</u>"  (Tr. at 25, <u>citing</u> tr. at 167[emphasis added].)  It cannot reasonably be said that Claimant's obesity was not fairly considered in combination with her other impairments.

The ALJ's consideration of the effects of Claimant's depression upon her other conditions is evident from his thorough discussion of her mental health history and the findings of those

who examined her.   (Tr. at 22-25.) While Ms. Salamacha and Ms.

Setliff-Gibson indicated that Claimant's mental condition could be

expected  to  exacerbate  any  pain  originating  from  a  physical

condition, (tr. at 192), the court finds that the ALJ did not err

in discounting these examiners' opinions.   As discussed above,

substantial medical evidence supported the ALJ's conclusions and

the  weight  he  afforded  this  report.   Claimant  points  to  no

additional evidence which might tend to support her argument that

her depression impacted her other impairments.

    Claimant next argues that the ALJ erred in failing to consider

the effect of her headaches upon her other impairments.  Claimant's

argument is seriously undercut by the fact that she initially cited

to a record from August 19, 2002 (a year before she applied for

benefits) to suggest that she suffered migraines almost daily and

that these could last two or three days.  (Pl.'s Br. at 15, <u>citing</u>

tr. at 200.)   In her Reply Brief, Claimant cites to her own

testimony at the hearing that she suffered migraines with nausea

and vomiting to this extent. (Pl.'s Rep. Br., p. 1, <u>citing</u> tr. at

260-261.)   However, the remainder of the record does not support

headaches of that frequency or severity.   Claimant did not report

such debilitating headaches to any of her providers during the

relevant time period of August 2003 through November 17, 2004. (Tr.

at 139-140 (none reported); 145 (none reported); 157 (self reports

"migraines" but does not state frequency or degree); 195-198 (one

16

mention of "migraines")).

Claimant asserts and the court recognizes that conditions such as migraine headaches may evade documentation by objective medical evidence and laboratory testing.  (Pl.'s Rep. Br. at 1-2.)  This, however, is not a problem in the instant case.  The fact in this case is that there is only scant evidence that Claimant even *reported* headaches or *complained* of headaches to her physicians, as one would assume she would if she were suffering severe pain or limitations.  Claimant barely pursued any relief, and that is what speaks volumes here----not the lack of objective or laboratory documentation.

Claimant argues that the ALJ failed to consider the effects of her fibromyalgia upon her other impairments.  (Pl.'s Br. at 15.) However, this argument fails for the same reasons above; namely, that Claimant's medical records do not reflect that this condition would exacerbate or contribute to any of her other medical conditions.  Rosendo Dy, M.D., is the only physician to diagnose fibromyalgia during the relevant time period.  His single record of October 1, 2004 does not indicate that this condition would restrict Claimant from performing light work as recommended by other examiners and consultants. (Tr. at 242.) Claimant offers no evidence at all as to how this impairment affected her.

The cases cited by the Commissioner at the conclusion of her Brief are persuasive and on point.  It is highly significant to

this court that no medical source has opined that Claimant is totally disabled from work, either based on a single impairment or her impairments in combination.  Potter v. Secretary of Health and Human Services, 905 F.2d 1346, 1349 (10th Cir. 1990); Gayton v. Secretary of Health and Human Services, 691 F.Supp. 22, 24 (N.D. Ohio 1988); Nunn v. Bowen, 828 F.2d 1140, 1145 (6th Cir. 1987).  In this case, while the court compliments Claimant on her well-researched arguments as to combination of impairments, the record simply does not back her position.

The court proposes that the presiding District Judge find that the ALJ properly considered Claimant's impairments in combination and that his opinion was supported by substantial evidence in this respect.

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the presiding District Judge **DENY** the Plaintiff's Motion for Judgment on the Pleadings, **GRANT** the Defendant's motion for judgment, **AFFIRM** the final decision of the Commissioner and **DISMISS** this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have ten days (filing of objections) and then three days

(mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Copenhaver, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to counsel of record.

August 29, 2006
        Date

_Mary E. Stanley_
Mary E. Stanley
United States Magistrate Judge

19